W. Henry WHITE, Appellant,

v.

LAKEWOOD BANK AND TRUST COMPANY et al., Appellees.

No. 17242.

Court of Civil Appeals of Texas.

Dallas.

Feb. 21, 1969.

Charles O. Shields, of Anderson, Henley, Shields, Bradford & Pritchard, Dallas, for appellant.

Robert S. Addison, of Storey, Armstrong & Steger, Dallas, for appellees.

BATEMAN, Justice.

W. Henry White appeals from a summary judgment granted to the appellees Lakewood Bank & Trust Company, herein referred to as the Bank, and Carl Peter Faust, Jr., in a suit wherein the appellant, as plaintiff, sought to set aside the foreclosure sale of certain real property under a deed of trust held by the Bank, as well as a subsequent deed whereby the Bank conveyed the same property to Faust, and also for damages.

■ One filing a motion for summary judgment assumes the burden of demonstrating that no genuine issue as to any material fact exists and that he is entitled to a judgment as a matter of law, and the court, in passing on whether this burden has been carried, must resolve all doubts against the movant. Evidence which favors the movant's position should not be considered unless it is uncontradicted, and if such uncontradicted evidence is given by an interested witness, it cannot be considered as doing more than raising an issue of fact unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach the same. The court should view the evidence in the light most favorable to the party opposing the motion and accept as true the evidence which tends to support his position. Rule 166–A, Vernon's Texas Rules of Civil Procedure; Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.1965).

Appellant alleged that the Bank had agreed with him that he could make the monthly installment payments specified in his note "in certain lump sums", that the Bank had "agreed to accept the delinquent payments in lump sum payments at a future date some time after the date of said trustee sale," which agreement lulled appellant into believing that no action had been taken by the Bank to accelerate the matu-rity of the note or to foreclose the lien, by reason of which facts the foreclosure and subsequent sale to Faust constituted a fraud on appellant, entitling him to a judgment for the property and damages of $10,000.

Attached to appellees' motion for summary judgment was the affidavit of Doyle D. Collins, a vice-president of the Bank, which, after reciting the execution of the note and deed of trust and the sale of the property at the trustee's sale, contained these words:

"I, Doyle D. Collins, never made or had an agreement with Plaintiff, W. H. White, or statement or representation to him, to forego or withhold foreclosure proceedings until the said W. H. White could pay the delinquent installments of May, June, July, August, and September of 1966, or any other months. Nor did I make or have an agreement with Plaintiff, W. H. White, or statement and representation to him, to accept any delinquent payments in a lump sum at a future date after the date of the above-described Trustee's Sale."

It appears from the undisputed evidence offered at the hearing that appellant executed and delivered his promissory note to the Bank, in the principal sum of $3,000, dated January 8, 1963, payable in monthly installments of $60.00 each beginning February 15, 1963, secured by deed of trust on real property owned by appellant; and that these words appear on the face of the note:

"The makers hereof and any and all endorsers hereof hereby waive presentment for payment, protest and notice of protest and nonpayment and notice of any acceleration of the maturity hereof."

The deed of trust contained a clause as follows:

"IT IS SPECIALLY AGREED that in case of any sale hereunder, all prerequisites to said sale shall be presumed to have been performed, and that in any

conveyance given hereunder all statements of facts, or other recitals therein made, as to the non-payment of money secured, or as to the breach or non-performance of any of the covenents herein set forth, or as to the request of the Trustee, to enforce this Trust, or as to the proper and due appointment of any substitute Trustee, or as to the advertisement of sale, or time or place or manner of sale, or as to any other preliminary act or thing, shall be taken in all courts of law or equity as prima facie evidence that the facts so stated or recited are true."

It was also shown without dispute that appellant failed to make the payments due on the note for the months of June, July, August, September and October, 1966, that the Bank foreclosed on the security by substitute trustee's sale in November, 1966 at which time the principal unpaid balance on the note was $1,197.85 plus interest, taxes, attorney's fees and other charges making a total of approximately $1,400. The substitute trustee's deed conveys the property to the Bank for a recited consideration of $1,400. The Bank thereafter sold it to appellee Faust for $3,500.

██ The foregoing facts, in our opinion, were sufficient to establish the absence of a genuine, material fact issue and the right of appellees to a judgment in their favor as a matter of law.

Appellant filed an answer to the motion for summary judgment and attached thereto his own affidavit, the pertinent parts of which, after reciting his execution of the note and deed of trust, are as follows:

"4. From the inception of the promissory note, my payments on said note were in regular,* due to the type of speculative business dealings in which I was involved, and by agreement between myself and the defendant, Lakewood Bank and Trust Company, that I could pay any delinquent payments in lump sum payments periodically at my convenience. Because of this agreement, my payments ranged from monthly to five and one-half month intervals and all such payments were readily accepted by Lakewood Bank and Trust Company.

5. That in reliance upon the above-stated payment agreement and arrangement, I, in good faith, believed that the defendant bank would not foreclose on the balance of the note due without actual notice being given to me.

6. That my last payment was made on the 13th day of May, 1966, in the amount of Two Hundred and Forty ($240.) Dollars, leaving the amount unpaid at One Thousand One Hundred Ninety-Seven and 85/100 Dollars ($1,-197.85), plus interest as provided thereon.

7. That subsequent to this date and subsequent to the date of foreclosure I had telephone conversations with Doyle Collins, an officer of the defendant, Lakewood Bank and Trust Company, concerning my payments due on said note. In said conversations he (Mr. Collins) asked me about bringing my payments up to date. I told Mr. Collins that I had certain business dealings that were in the process of maturing and that I could pay off the entire note at once in a lump sum payment within a few months and if the bank needed their money immediately, I would make a loan at another bank and bring my payments up to date. The representative of the bank at no time during said conversations told me that the bank had foreclosed or was going to foreclose, posting notice on the Deed of Trust."

Appellant urges that the foregoing statements in his affidavit raise a fact issue as to whether there was actually a default and a basis for acceleration of the unpaid installments of the note. He relies on Southern Building & Loan Ass'n v. Jack-

---

* Probably intended to read "irregular".

son, 290 S.W. 266 (Tex.Civ.App., Dallas 1927, no writ); Diamond v. Hodges, 58 S.W.2d 187 (Tex.Civ.App., Dallas 1933, no writ); Jacobson v. National Western Life Ins. Co., 403 S.W.2d 528 (Tex.Civ.App., Houston 1966, no writ); and Cox v. Medical Center Nat. Bank, 424 S.W.2d 954 (Tex.Civ.App., Houston, 14th Dist., 1968, no writ).

■ To demonstrate the existence of a genuine issue as to a material fact, and thus counteract appellees' showing, it was incumbent upon appellant to produce at least some evidence of an extension of the maturity of one or more of the installments of the note. The nearest he comes to doing so in his affidavit is the language in paragraph 4 thereof to the effect that there was an agreement between himself and the Bank that he could pay any delinquent payments in lump sum payments periodically at his convenience. This statement is ineffective to establish, even prima facie, a valid extension of the time of payment. Since the alleged extension agreement was not in writing, it was ineffectual without a showing that it was supported by a valid consideration and was for a definite period of time. Crispi v. Emmott, 337 S.W.2d 314, 318 (Tex.Civ.App., Houston 1960, no writ) and cases cited therein; Mizell Const. Co. & Truck Line, Inc. v. Mack Trucks, Inc., 345 S.W.2d 835 (Tex. Civ.App., Houston 1961, no writ); Jacobson v. National Western Life Ins. Co., supra.

In his oral deposition, the appellant testified that all of his dealings with the Bank were through Doyle D. Collins, a part of whose affidavit is quoted above, and that after he made his last payment on or about May 31, 1966 he did not have any conversations with Mr. Collins until about November 15, 1966, which was after the foreclosure sale, and that in that conversation Collins reminded him that he was three or four payments behind, and when asked what Collins said if he didn't send in the money, he said: "That they were going to put—foreclose on it." He said he did not send the payments in because he had explained to Collins what he had coming in and that he would renew it or anything Collins wanted him to do; that he told Collins the State was "coming across six acres" of his land at Mesquite and that he told him: "Whenever they paid me off, I would pay off him, and then I had condemnation at Forney, and I told him when either one come through I would pay off and if he needed it before then, I would go to Fair Park Bank and refinance it down there. That's the last I heard of it until March." He then testified that Collins never said he would agree to an extension, but he never said he was going on and foreclose, that he did not have an agreement, that Collins didn't ever say yes or no. When asked if it was ever his understanding that the Bank would just sit back and not do anything until he came to them, he said: "No, sir, it wasn't understood there. But if he wanted me, I would have went over there and renewed it, paid this interest up or anything he wanted. I thought Doyle knew it." When asked again to repeat the conversation he had with Doyle Collins around November 15, 1966, he said: "Well, he called me up and told me I was two or three behind; he was going to foreclose, and I told him, I said, 'Doyle, I'll try to get you some in just as quick as I can,' and that was it. I didn't think he was that scared of me or anything." He said he told Collins that he would go to the Fair Park Bank, and Collins didn't tell him to and didn't tell him not to; that Collins told him they were going to foreclose, adding, "But every time he called, I just thought Doyle was teasing me."

This testimony shows conclusively, we think, that there was no evidence before the court that would raise a fact issue as to a valid extension of the maturity of any part of the note, or as to whether appellant was in default. In Cox v. Medical Center

Nat. Bank, 424 S.W.2d 954 (Tex.Civ.App., Houston, 14th Dist., 1968, no writ), the facts were quite similar to the facts of this case, except that in *Cox* there was evidence that an officer of the bank told the borrower that foreclosure would be postponed as long as progress was being made toward permanent financing and so long as the interest was paid as it accrued. The following language in the Cox opinion is quite applicable here:

"It cannot be said that the bank is to be deprived of its right to enforce its mortgage by oral, general statements of an official of the bank that no foreclosure would be had so long as the interest is paid, when the principal indebtedness is seriously in default and after the bank has delayed its foreclosure for four months. Mizell Const. Co. & Truck Line, Inc. v. Mack Trucks, Inc., 345 S. W.2d 835 (Tex.Civ.App.), no writ hist. To give the effect desired by appellant to such a statement would be to nullify the primary obligation created by the note and to do violence to the written terms of the deed of trust."

■ Appellant claims to have been defrauded by the Bank into believing that he could pay up the delinquent installments on his note at his convenience. However, we find no evidence of any statement made by any officer of the Bank that could be construed as such fraud, and Collins' affidavit to the contrary is clear, direct and positive and we find in the record no circumstances tending to discredit or impeach the same. The conversation between appellant and Collins which is relied on as establishing both the agreement to extend the note and the fraud, admittedly took place after the foreclosure sale. He had already lost whatever equity he may have had in the property when the alleged fraud occurred. There was no showing that the Bank's officer made any representation to appellant with intent to induce him to do or refrain from doing any act.

With respect to the requirement that an oral agreement of extension, to be enforceable, must be for a definite time, appellant argues that his oral agreement did concern payment of both principal and the interest "at a definite future time determined when certain business deals could be completed." This obviously refers to the statement he said he made to Collins, to the effect that he expected certain condemnation proceedings to produce some funds out of which he would pay up the past due installments on his note, but there was no showing whatever that there was any definite time agreed upon when this would take place, and there is nothing in the record before us to show that the condemnation proceedings ever occurred or that payment was ever actually tendered.

■ There can be no serious question concerning the right of the appellee Faust to a summary judgment in his favor. He was not accused of any fraud or other wrongful conduct, and there is nothing in the record to suggest any reason why he does not occupy the position of a bona fide purchaser for value.

■ Appellant argues that the property was worth substantially more than the balance owing on his note, and substantially more than the price at which the Bank bought it in at the foreclosure sale, but this is not recognized by the law as a basis for invalidating such a sale. A trustee's sale will not be set aside merely because of inadequate price. There must be evidence of irregularity which caused or contributed to cause the property to be sold for a grossly inadequate price, Sparkman v. McWhirter, 263 S.W.2d 832 (Tex.Civ.App., Dallas 1953, writ ref'd), and no such irregularity was shown here.

In our opinion, the summary judgment was correct and it is therefore

Affirmed.